UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                       :

CASVILLE INVESTMENTS, LTD., et al.,      :

                       Plaintiffs,      :

                                         :

             -v-                           :

                                         :

JASON KATES, et al.,                           :

                       Defendants.   :

                                         :
------------------------------------------------------------ X

No. 12 Civ. 6968 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

       Plaintiffs Casville Investments, Ltd., MBC Investment SA and Watkins International, Ltd. (collectively, "Plaintiffs") bring this action on behalf of themselves and derivatively on behalf of Argo Digital Solutions, Inc. ("Argo")[1] against Defendants Jason Kates, Richard Sullivan, David Loppert, World Capital Markets, Inc. ("World Capital"), Solutions, Inc. ("Solutions"), RVUE Holdings, Inc. ("RVUE") and John Does 1-20 (collectively, "Defendants"). Defendants now move to dismiss or, in the alternative, to transfer this action pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motions to dismiss are denied but the motions to transfer are granted. This case shall be transferred to the United States District Court for the Southern District of Florida.

---

[1]      Argo is named as a nominal defendant in this action.

I.      **Background**[2]

Plaintiffs are shareholders and investors in Argo, a now defunct technology company. Casville Investments, Ltd. is a corporation organized under the laws of the British Overseas Territory of Gibraltar and maintains its principal office there.  (Compl. ¶ 8.)  MBC Investments, SA is a corporation organized under the laws of Switzerland and maintains its principal office there.  (Id. ¶ 9.)  Watkins International, Ltd. is a corporation organized under the laws of the Republic of Panama and maintains its principal office there.  (Id. ¶ 10.)  Argo was a corporation organized under the laws of Delaware and maintained its principal office in Fort Lauderdale, Florida.  (Id. ¶ 11.)

Defendants were officers, directors or agents of Argo and are currently officers and directors of RVUE.  RVUE is a corporation organized under the laws of Nevada and maintains its principal place of business in Fort Lauderdale, Florida.  (Id. ¶ 12.)  Kates was the CEO, President and a director of Argo and subsequently served as the CEO, President and Chairman of RVUE.  (Id. ¶ 13.)  Kates resides in Fort Lauderdale, Florida.  (Id.)  Sullivan was the Chairman of the Board of Directors and a financial consultant to Argo and subsequently served as a director of RVUE for a period of time in 2010.  (Id. ¶ 14.)  Sullivan also is the founder, director, CEO, President and majority shareholder of World Capital, as well as the founder, President, Secretary, Chairman and controlling shareholder of Solutions.  (Id. ¶ 14.)  He resides in West Palm Beach, Florida.  (Id.)  World Capital is a corporation organized under the laws of Florida and maintains its principal place of business in West Palm Beach, Florida.  (Id. ¶ 16.)  Solutions is a corporation organized under the laws of Delaware and maintains its principal place of business in West Palm Beach, Florida.  (Id. ¶ 17.)  World Capital and Solutions were hired by

---

[2]      The following facts, drawn from Plaintiffs' complaint and the affidavits submitted by the parties, are construed in the light most favorable to Plaintiffs for purposes of the instant motion.  Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007); Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

Argo to assist it with selling its assets.  (See id. ¶ 43.)  Loppert was the Senior Vice President of Finance for Argo and subsequently served as the CFO, Secretary and Treasurer of RVUE.  (Id. ¶ 15.)  He resides in Palm Beach Gardens, Florida.[3]  (Id.)

According to Plaintiffs, beginning in or around early December 2008, Argo Defendants allegedly "devised and carried out [a] common plan and scheme to transfer all, or substantially all, assets of Argo [] to a debt-free shell company which [they] controlled," which would leave Argo with only liabilities.  (Id. ¶ 47.)  In furtherance of this plan, in or about March 2009, Argo Defendants "induced" Argo shareholders to approve, inter alia, "a vague plan to take the company public."  (Id. ¶ 51.)  Plaintiffs claim that the valuations and projections included in the March 2009 offering materials "diverged enormously from the actual financial condition" of the company and contained false statements regarding actions taken by the company.  (Id. ¶¶ 53-54.)

Also during December 2008, Plaintiffs allege that Argo Defendants "solicited [Argo] shareholders to approve an increase in the number of authorized shares of the [c]ompany from 25,000,000 to 250,000,000 shares."  (Id. ¶ 57.)  As a result, between December 31, 2008 and December 1, 2009, Kates' shares increased from 4 million to 60 million, Sullivan, World Capital and Solutions' shares increased from zero to 61 million, and Loppert's shares increased from zero to 5.5 million.  (Id. ¶ 61.)  Argo Defendants' share ownership collectively increased from 18% to 80%, while Plaintiffs' share ownership dropped from approximately 12% to less than 2%.  (Id. ¶ 63.)  Plaintiffs allege that Argo Defendants did not pay for the newly acquired shares. (Id. ¶ 62.)

In or around October 2009, Argo Defendants began informing shareholders that Argo would "spin-out . . . its largest and most valuable asset and business, the rVue Software, into

---

[3]     Kates, Sullivan, Loppert, World Capital and Solutions are collectively referred to as the "Argo Defendants."

rVue Inc, an entity that has no prior business encumbrances." (Id. ¶ 64.) They asserted that shares of rVue, Inc. would be distributed pro rata to Argo shareholders and then rVue, Inc. would become public through a reverse merger with a public shell company. (Id.) Subsequently, in or around March 2010, Plaintiffs allege that Argo Defendants "used their unlawfully acquired majority interest share in [Argo]" to approve the plan to "sell" all of the shares of rVue, Inc. and all other Argo assets to a public shell company. (Id. ¶ 67.) In exchange, Argo would receive shares in the shell company. (Id.) Plaintiffs refer to this transaction as the "Fraudulent Conveyance." (Id. ¶ 11.) In a March 23, 2010 letter to shareholders, Argo Defendants disclosed that the Fraudulent Conveyance had been approved by consent and without a shareholder meeting. (Id. ¶ 68.) Also on March 23, 2010, they disseminated a Private Placement Memorandum ("PPM") "as part of their solicitation of Argo [] shareholders and other potential investors to invest in the public shell company." (Id. ¶ 69.) "The PPM stated, among other things, that the transfer of all of Argo['s] [] assets would be accomplished by the reverse merger of rVue, Inc. into the public shell and [Argo] would be left to liquidate without operating assets." (Id. ¶ 70.) In exchange, RVUE, the new public company, would "transfer its previously worthless shares to [Argo] to be held in a liquidating trust," which would be locked up for one year pursuant to an agreement with Argo. (Id.) The PPM also allegedly stated that RVUE would have the same management as Argo. (Id.)

According to Plaintiffs, to effectuate the sale of rVue, Inc. to RVUE, certain contracts were entered into by and between Defendants.[4] (Pls. Opp'n 5.) On May 13, 2010, Argo, rVue, Inc. and RVUE entered into an asset purchase agreement pursuant to which RVUE acquired all of the stock and business of rVue, Inc., as well as any and all assets related to the rVue, Inc.

---

[4]     The agreements are not referenced in the complaint, but the Court is permitted to rely on affidavits submitted in opposition to Defendants' motion to dismiss. See Phillips, 494 F.3d at 384.

4

business from Argo (the "Asset Purchase Agreement" or "Agreement").[5]  (Martin Kaplan Decl., Jan. 22, 2013, Ex. B.)  Also on that date, both Kates and Loppert executed employment agreements with RVUE, (id. at Ex. D), and a stock purchase agreement was entered into between RVUE and the former owner of the shell company, (id. at Ex. E).  A form lock-up agreement was attached to RVUE's Form 8-K filed with the SEC on May 19, 2010.  (Id. at Ex. C.)

Plaintiffs allege that Kates told Argo shareholders that they would receive 202,266 shares from the Fraudulent Conveyance consideration, which was 1.6% of the consideration received by Argo.  (Compl. ¶ 76.)  "Years after the Fraudulent Conveyance and months after the extended termination date of the Lock-Up period," however, Plaintiffs "have not received any portion of the Fraudulent Conveyance Consideration due after payment of [Argo's] outstanding debt."  (Id. ¶ 82.)  According to Plaintiffs, Defendants obtained nearly three million shares of RVUE, which they sold as "free trading shares," despite them actually being restricted, for a "substantial and wrongful profit."  (Id. ¶¶ 3, 78-79.)

Plaintiffs commenced this action on September 14, 2012 asserting claims of breach of fiduciary duty, fraudulent conveyance, breach of contract and unjust enrichment.  On November 19, 2013, Argo Defendants filed a motion to dismiss or transfer this action pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3).[6]  (Dkt. No. 10.)  On December 21, 2012, RVUE filed a motion to dismiss or transfer this action pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) and 9(b).[7]  (Dkt. No. 44.)  For the following reasons, Defendants' motions to dismiss are denied but their motions to transfer are granted.

---

[5]        Plaintiffs allege that Rivulent International, Inc. was identified as the acquirer of rVue, Inc.  Rivulet International changed its name to RVUE Holdings, Inc. ("RVUE") in 2010.  (Compl. ¶ 72.)

[6]        On January 17, 2013, Defendant Kates filed a notice of motion joining in the motion filed by Argo Defendants.  (Dkt. No. 50.)  Kates' motion is granted.

[7]        RVUE also moves to dismiss this action pursuant to Rules 9(b) and 12(b)(6).  Because the Court grants

## II.     Standard of Review

The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction.  See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005).  When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper.  DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); Savoy Senior Hous. Corp. v. TRBC Ministries, 401 B.R. 589, 596 (S.D.N.Y. 2009).  Courts may rely on materials outside the pleadings when ruling on such motions.  Gulf Ins. Co., 417 F.3d at 355; DiStefano, 286 F.3d at 84.  "If the court chooses to rely on pleadings and affidavits" and not conduct an evidentiary hearing, "the plaintiff need only make a prima facie showing" of jurisdiction or venue.  Gulf Ins. Co., 417 F.3d at 355.  The court must credit the plaintiff's factual averments as true, Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996); Boehner v. Heise, 410 F. Supp. 2d 228, 240 (S.D.N.Y. 2006), and "construe the pleadings and affidavits in the light most favorable to the plaintiff[], resolving all doubts in [its] favor."  Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008); Martinez v. Bloomberg LP, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012).[8]

---

Defendants' motions to transfer to the Southern District of Florida, it does not reach issues raised under Rules 9(b) and 12(b)(6).  See Anwar v. Fairfield Greenwich Ltd., 742 F. Supp. 2d 367, 370 (S.D.N.Y. 2010).

[8]     As discussed below, in opposition to Defendants' motion to dismiss, Plaintiffs rely on the forum selection clause in the Asset Purchase Agreement.  Although the Second Circuit has "refused to pigeon-hole" claims based on forum selection clauses into a particular clause of Rule 12(b), see Asoma Corp. v. SK Shipping Co., 467 F.3d 817, 822 (2d Cir. 2006), the Court relies on Rule 12(b)(3) to assess the applicability of the forum selection clause to this action.  See In re Facebook, Inc., MDL No. 12-2389 (RWS), 2013 WL 525158, at *8 (S.D.N.Y. Feb. 13, 2013) (internal quotation marks omitted) ("Courts in this Circuit appear to prefer Rule 12(b)(3) as the procedural device used to enforce a forum selection clause.").

**III.      Discussion**

Defendants move to dismiss or transfer this action for both lack of personal jurisdiction and improper venue.  In response to Defendants' motions, Plaintiffs invoke the forum selection clause contained in the Asset Purchase Agreement.   Plaintiffs do not otherwise respond to Defendants' arguments regarding jurisdiction and venue.  Accordingly, the Court first considers whether the forum selection clause in the Asset Purchase Agreement applies to this action. Because the Court finds that the forum selection clause does not apply, it must consider whether the jurisdiction and venue of this Court are otherwise appropriate.  Upon reviewing the elements of New York's long-arm statute as well as the venue statute, the Court concludes that neither is satisfied here.

**A.      The Forum Selection Clause in the Asset Purchase Agreement**

Plaintiffs contend that this case is properly brought in this Court pursuant to the forum selection clause in the Asset Purchases Agreement.  That clause provides as follows:

> The parties hereby agree that any dispute between or among them arising out of or in connection with this Agreement shall be adjudicated only before a Federal court located in New York, New York, and they hereby submit to the exclusive jurisdiction of the federal courts located in New York, New York, with respect to any action or legal proceeding commenced by any party, and irrevocably waive any objection they now or hereafter may have respecting the venue of any such action or proceeding brought in such a court or respecting the fact that such court is an inconvenient forum, relating to or arising out of this Agreement.

(Kaplan Decl. Ex. B § 10.06.)   Plaintiffs argue that their claims "derive entirely" from the Agreement and that it was entered into by RVUE and Argo "on behalf of and for the benefit of Kates, Sullivan and Loppert, as directors and officers, and World Capital and Solutions, as agents and beneficiaries of the share dilution."  (Pls. Opp'n 5, 8-9.)  Defendants respond that the forum selection clause is not applicable here because several of the parties were not signatories to the Agreement and Plaintiffs' claims do not arise out of the Agreement.  Argo Defendants

assert that Plaintiffs' allegations relate to actions taken before or after the alleged Fraudulent

Conveyance, (Argo Defs. Reply 2), and RVUE contends that "Plaintiffs' claims are premised

upon duties and actions that are separate and apart from any contractual provisions of the

[Agreement]," (RVUE Reply 5).

"Parties can consent to personal jurisdiction through forum[]selection clauses in

contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).  If the

forum selection clause is valid and applicable, "it is not necessary to analyze jurisdiction under

New York's long-arm statute or federal constitutional requirements of due process."  LaRoss

Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147, 153 (E.D.N.Y. 2012).  Courts apply a

four-part analysis to determine whether a forum selection clause applies to a particular claim:

> The first inquiry is whether the clause was reasonably communicated to the party
> resisting enforcement.  The second step requires us to classify the clause as
> mandatory or permissive, i.e., to decide whether the parties are required to bring
> any dispute to the designated forum or simply permitted to do so.  Part three asks
> whether the claims and parties involved in the suit are subject to the forum
> selection clause.  If the forum selection clause was communicated to the resisting
> party, has mandatory force and covers the claims and parties involved in the
> dispute, it is presumptively enforceable.  The fourth, and final, step is to ascertain
> whether the resisting party has rebutted the presumption of enforceability by
> making a sufficiently strong showing that enforcement would be unreasonable or
> unjust, or that the clause was invalid for such reasons as fraud or overreaching.

Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 720-21 (2d Cir. 2013) (quoting

Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007)).

Defendants challenge the third prong of this inquiry on the grounds that the forum

selection clause in the Agreement does not apply to Plaintiffs, several of the Defendants, or to

Plaintiffs' claims.  Although Plaintiffs' claims "arise out of or in connection with" the

Agreement, the Court agrees that Plaintiffs cannot invoke this clause.  This case is substantially

similar to both Bensinger v. Denbury Resource Inc., No. 10 Civ. 1917 (JG), 2011 WL 3648277

(E.D.N.Y. Aug. 17, 2011), and APA Excelsior III L.P. v. Premiere Techs., Inc., 49 F. Supp. 2d 664 (S.D.N.Y. 1999), in which those courts found that shareholders of a corporation could not invoke a forum selection clause in an agreement entered into by the corporation and a third party entity.   As in Bensinger and APA Excelsior III L.P., Plaintiffs are not are parties to the Agreement—which was entered into by Jason Kates on behalf of Argo and rVue, Inc. and Mark Tolstoi on behalf of RVUE—and the plain language of the forum selection clause itself makes clear that it applies exclusively to the parties to the Agreement.  (See Kaplan Decl. Ex. B § 10.06 ("The parties hereby agree that any dispute between or among them . . . .").)  See Bensinger, 2011 WL 3648277, at *5 (relying on language in forum selection clause that only refers to the parties and does not mention any other parties in finding the clause inapplicable); APA Excelsior III L.P., 49 F. Supp. 2d at 671 (noting that the forum selection clause "expressly states that it applies to 'each of the parties hereto'").

Moreover, although non-parties may be bound by forum selection clauses when they are "closely related" to a signatory, see Magi XXI, Inc., 714 F.3d at 723, Plaintiffs are likely unable to satisfy this test.  Not only were none of them a party to the Asset Purchase Agreement, at least four of the six Defendants were not either.  See APA Excelsior III L.P., 49 F. Supp. 2d at 671 (finding, in the context of a suit brought by shareholders of an acquired corporation against purchaser, that it was "unclear whether [p]laintiffs are able to invoke the forum selection clause against defendants," where "[n]one of the plaintiffs was a party to the merger agreement and only one defendant was," despite the fact that plaintiffs and other defendants may have been involved in negotiating the agreement); see also Bensinger, 2011 WL 3648277, at *5 (in the context of a suit brought by shareholder of an acquired company against purchaser, noting that shareholder was not a party to the merger agreement containing the forum selection clause and

declining to invoke it); <u>Acosta v. JPMorgan Chase & Co.</u>, No. 05 Civ. 977 (NRB), 2006 WL 229196, at *5 (S.D.N.Y. Jan. 30, 2006) ("[B]ecause none of the plaintiffs or defendants was a signatory to the [a]greement, it is highly doubtful that it would even apply to any disputes with respect to these parties.").

In any event, like in <u>Bensinger</u> and <u>APA Excelsior III L.P.</u>, the forum selection clause cannot be invoked by Plaintiffs because they are barred from doing so under the express terms of the Agreement itself.  Section 10.05 of the Agreement provides that "[t]he provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. . . . Neither this Agreement nor any provision hereof is intended to confer upon any person other than the parties hereto any rights or remedies hereunder."[9]  As the Agreement clearly states that no rights or remedies are conferred to non-parties, Plaintiffs cannot rely on the forum selection clause in the Agreement as a basis for finding that jurisdiction or venue is proper in this Court.  <u>See</u> <u>Bensinger</u>, 2011 WL 3648277, at *5 (finding that language in the agreement—"nothing in this [a]greement, express or implied, is intended to or shall confer upon any other person any right, benefit or remedy of any nature whatsoever under or by reason of this [a]greement"—excludes shareholder from the agreement and from the reach of the forum selection clause specifically); <u>APA Excelsior III L.P.</u>, 49 F. Supp. 2d at 671 (relying on language in the agreement that specifies that "non-parties may not take advantage of its terms" in finding that forum selection clause is not operative in shareholder suit).  Finding the forum selection clause inapplicable, the Court will thus address whether it has personal jurisdiction over Defendants pursuant to New York's long-arm statute and whether venue is proper in this district.

---

[9]     Plaintiffs are neither successors nor assigns of the signatories to the Agreement.

### B.        Personal Jurisdiction over Defendants Pursuant to CPLR 302(a)(1)

Defendants contend that this Court lacks personal jurisdiction over them pursuant to New York's long-arm statute, NY CPLR 302, because Plaintiffs cannot demonstrate that Defendants transacted business in New York or that Plaintiffs' claims arise from any such transaction.  In diversity cases, "[a] federal court's jurisdiction over non-resident defendants is governed by the law of the state in which the court sits—including the state's long-arm statute—to the extent this law comports with the requirements of due process."  Arar v. Ashcroft, 532 F.3d 157, 173 (2d Cir. 2008); D.H. Blair & Co., 462 F.3d at 104.  Analysis of personal jurisdiction requires a two-step inquiry.  The Court must first determine whether the exercise of personal jurisdiction is proper under the laws of the forum state.  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007).  Only if the answer is in the affirmative does the court then consider whether a finding of personal jurisdiction "would be compatible with requirements of due process established under the Fourteenth Amendment."  Id.

Only one subsection of New York's long-arm statute, CPLR 302(a)(1), is relevant to this case.[10]  CPLR 302(a)(1) provides that:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent . . . (1) transacts any business within the state . . . .

Thus, in determining whether personal jurisdiction may be exercised under CPLR 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction."  Best Van Lines, 490

---

[10]        Defendants only address whether this Court has personal jurisdiction over them under CPLR 302(a)(1). The Court agrees that this provision is the one relevant to this action.  CPLR 302(a)(2) and (a)(3), which authorize personal jurisdiction for claims arising out of torts committed within and without New York causing injury within New York, are inapplicable.  Argo, the injured party, is a Delaware corporation with its principal place of business in Florida, and none of the Defendants resides in or maintains its principal place of business in New York.

F.3d at 246.  "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York."  Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012) (quoting Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 508 (N.Y. 2007)).  "A defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities here were purposeful.'"  Id. (quoting Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (N.Y. 2007)).  "Not all purposeful activity, however, constitutes a 'transaction of business' within the meaning of CPLR 302(a)(1)."  Id. at 62 (internal quotation marks and citations omitted).  "Although it is impossible to precisely fix those acts that constitute a transaction of business . . . it is the quality of the defendant's New York contacts that is the primary consideration."  Id. (quoting Fischbarg, 9 N.Y.3d at 380).  A court must consider the totality of the circumstances in conducting this inquiry.  Id.  Moreover, to satisfy the second prong of CPLR 302(a)(1), there must be an "articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  Best Van Lines, 490 F.3d at 246.

Plaintiffs have failed to satisfy either prong of CPLR 302(a)(1).  As previously noted, no Defendant resides in or maintains its principal office in New York.  In support of their motion, Argo Defendants all affirmed that they do "not transact, either personally or through an agent, any business within New York."  (Jason Kates Aff., Jan. 11, 2013, ¶ 7; David Loppert Aff., Nov. 13, 2012, ¶ 7; Richard Sullivan Aff., Nov. 14, 2012, ¶ 7; World Capital Aff., Nov. 14, 2013, ¶ 7; Solutions Aff., Nov. 14, 2013, ¶ 7.)  RVUE also affirmed that it does not and has never conducted business in New York, maintained a bank account in New York, employed individuals in New York, or owned any real estate in New York.  (Michael Mullarkey Aff., Dec. 20, 2012, ¶¶ 8-11.)

In their complaint, Plaintiffs allege that "Defendants, upon information and belief, retained corporate counsel in New York and other professionals that assisted Defendants in structuring the fraudulent conveyances and related transactions, and these transactions occurred in New York." (Compl. ¶ 7.) Defendants, however, have presented evidence to refute this conclusory allegation.  In their affidavits, both Kates and Loppert stated the following:

> With regard to the allegations of the Verified Derivative Complaint, at no time did [they], individually or through an agent, engage in any acts within the State of New York nor did [they] confer with any professional in New York that assisted in structuring any transactions set forth in [the complaint].  At no time[] did [they] either directly or indirectly retain any professionals in New York in any capacity on behalf of Argo Digital Solutions, Inc. or [RVUE] regarding any transactions set forth in the [c]omplaint.

(Kates Aff. ¶ 8; Loppert Aff. ¶ 8.)  Loppert clarified that the law firm and attorneys involved in the transactions referenced in the complaint—which occurred between December 2008 and December 2010 at the latest—were members of Florida law firm, Akerman Senterfitt.  (Id. ¶ 9.) That firm was terminated in December 2010 and RVUE retained a New York law firm, Sichenzia Ross Friedman Ferrance LLP ("SRFF") in January 2011.  (Id.)

In response, Plaintiffs direct the Court's attention to RVUE's December 2010 Form 8-K SEC filing, which includes references to Harvey Kesner, an attorney with SRFF; however such references relate not to his role as counsel, but to Kesner's role as a managing member of Paradox Capital Partners LLC, an entity that advanced bridge loans to RVUE and owned shares of RVUE.  (Kaplan Decl. Ex. F at 8, 34.)  It makes no mention of whether RVUE's contacts with Kesner occurred in New York, and in fact, the 8-K provides a New Jersey address for Kesner. Finally, Plaintiffs note that the stock purchase agreement between RVUE and the former owner of the shell company directs that notices for RVUE be sent to Kesner at SRFF in New York. (Kaplan Decl. Ex. E at 8.)  Although the existence of a notice provision in a contract that

requires a defendant to send notices into New York is relevant to the jurisdictional inquiry, see Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22-23 (2d Cir. 2004), there is no evidence that Defendants did indeed send notices into New York, or received such notices via Kesner in New York.  Cf. DLJ Mortg. Capital, Inc. v. Cameron Fin. Grp., Inc., No. 07 Civ. 3746 (LAP), 2007 WL 4325893, at *3 (S.D.N.Y. Dec. 4, 2007) (finding that the existence of a notice provision in an agreement requiring defendants to send notices and payments to New York and the fact that defendants had made such payments supported a finding of jurisdiction).  Even if Kesner assisted RVUE with the stock purchase agreement, this contract was designed to permit RVUE to do business in perhaps Florida and Nevada, but not in New York.  See Barrett v. Tema Dev. (1988), Inc., 463 F. Supp. 2d 423, 432-33 (S.D.N.Y. 2006) (finding that defendant's use of a New York law firm in connection with negotiating a deal outside of New York was not activity "purposefully directed" at New York).

In any event, Defendants' relationship with Kesner is tangential to Plaintiffs' claims regarding the Fraudulent Conveyance.  Plaintiffs' claims, including breach of fiduciary duty and fraudulent conveyance, arise from Defendants' alleged scheme to fraudulently transfer Argo's assets to RVUE and illegally sell shares in RVUE; the claims do not arise from the stock purchase agreement.  Accordingly, there is no "substantial relationship" between Plaintiffs' claims and this activity.  See Best Van Lines, 490 F.3d at 246; see also Barrett, 463 F. Supp. 2d at 431 ("[N]o New York cases have been brought to the Court's attention where jurisdiction was based primarily on communications between the parties unless those communications were an integral part of a transaction directed at New York.").  Thus, to the extent Defendants transacted any business with New York attorneys, Plaintiffs' causes of action do not arise out of such

conduct and cannot satisfy CPLR 302(a)(1). As a result, the Court does not have personal jurisdiction over Defendants.

### C. Proper Venue Pursuant to 28 U.S.C. § 1391

Lastly, Defendants contend that venue is not properly laid in this district pursuant to 28 U.S.C. § 1391 and that the Court should either dismiss this action or transfer it to the Southern District of Florida pursuant to 28 U.S.C. § 1406 on that basis. The Court agrees and finds that the Southern District of Florida is a proper venue for this action.

Pursuant to § 1391(b), a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Id. For much of the reasons stated above, this district does not satisfy any of the three subdivisions of § 1391(b). The individual Defendants are residents of Florida, World Capital is a Florida corporation with its principal place of business in Florida, Solutions is a Delaware corporation with its principal place of business in Florida, and RVUE is a Nevada corporation with its principal place of business in Florida. See §1391(b)(1). Moreover, there are no allegations or evidence to show that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in New York. See § 1391(b)(2). Although Plaintiffs allege that Defendants retained professionals in New York that assisted them with the Fraudulent Conveyance and related transactions and that those transactions occurred in New York, for the

reasons stated above, neither the complaint nor the affidavits submitted to the Court support this allegation.

The Southern District of Florida, on the other hand, satisfies both subsections (1) and (2). All Defendants reside in the Southern District of Florida, thus satisfying § 1391(b)(1).  See § 1391(d) (For purposes of venue, a corporation "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State.").  Moreover, because Defendants transact business in Florida and Loppert has stated that attorneys in Florida assisted with the relevant transactions, a substantial part of the events giving rise to this action likely occurred in the Southern District of Florida as well.[11]  See § 1391(b)(2).

When a case is brought in an improper district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  § 1406(a).  The decision to transfer a case is within the discretion of the district court. Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993).  The parties in this action have been conducting discovery since December 2012.  Given the substantial amount of discovery that has taken place to date, the Court finds that it is in the interest of justice to transfer this action to the Southern District of Florida.  See Cold Spring Harbor Lab. v. Ropes & Gray LLP, 762 F. Supp. 2d 543, 560 (E.D.N.Y. 2011).

## III.   Conclusion

For the foregoing reasons, Defendants' motions to dismiss are denied and their motions to transfer are granted.

---

[11]   Because there is another district in which this action may be brought, the Court need not reach subsection (3) of § 1391(b).  Even if the Court considered this option, however, New York would still not be a proper venue for this action.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 10, 44 and 50, transfer this action to the United States District Court for the Southern District of Florida and close this case.

SO ORDERED.

Dated:     July 8, 2013
           New York, New York

Ronnie Abrams
United States District Judge

17